NOTICE
Decision filed 03/18/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240525-U

NOS. 5-24-0525, 5-24-0526, 5-24-0527 cons.

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | Nos. 19-CF-47, 20-CF-341, |
| | ) | 20-CF-345 |
| ELIAS D. HERNANDEZ, | ) | |
| | ) | Honorable Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CLARKE* delivered the judgment of the court.
Justices Barberis and Hackett** concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not abuse its discretion in (1) denying the defendant's motion to withdraw his guilty pleas, where defendant's guilty pleas were not the result of ineffective assistance of counsel; and (2) denying the defendant's motion to reconsider sentence in case 20-CF-345, where the circuit court properly considered mitigating factors, including the defendant's mental health.

¶ 2    In a global agreement, the defendant, Elias D. Hernandez, admitted to allegations contained in an amended petition to revoke his probation for residential burglary, and pled guilty to burglary of a motor vehicle and aggravated battery. The defendant was sentenced to a total of 15 years in the Illinois Department of Corrections, followed by 2 years of mandatory supervised release.

_____

*Justice Moore was originally assigned to the panel before his retirement. Justice Clarke was substituted on the panel and has read the briefs and listened to oral argument.
**Justice Welch was originally assigned to the panel prior to his death. Justice Hackett was substituted on the panel and has read the briefs and listened to oral argument.

1

Postplea counsel was appointed and filed amended motions to withdraw his guilty pleas and to reconsider his sentence. Following a hearing on the defendant's claims, the circuit court denied his motions. The defendant appeals, arguing that the circuit court erred in (1) denying the motion to withdraw his guilty pleas because his plea counsel was ineffective and (2) denying the motion to reconsider his sentence by failing to properly consider his mental health in mitigation. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      The facts necessary to our disposition of this appeal are as follows. On August 27, 2019, the defendant pleaded guilty in case No. 19-CF-47 to residential burglary, a Class 1 felony (720 ILCS 5/19-3(a) (West 2018)). By agreement, he was placed on 60 months of TASC probation (20 ILCS 301/40-10 (West 2018)). On November 10, 2020, the State charged the defendant in case No. 20-CF-341 with burglary, a Class 3 felony (720 ILCS 5/19-1(a) (West 2018)), criminal damage to property, a Class 4 felony (*id*. § 21-1(a)(1)), and theft over $500, a Class 3 felony (*id*. § 16-1(a)(1)(A)). Subsequently, the State filed a petition to revoke the defendant's TASC probation in connection with the new charges, alleging that the defendant violated the terms of his probation by committing new offenses. On November 12, 2020, the State charged the defendant by information in case No. 20-CF-345 with the aggravated battery of a correctional officer, a Class 2 felony (*id*. § 12-3.05(d)(4)). The State later filed an amended information on February 2, 2021, adding a charge of resisting a correctional officer, a Class 4 felony (*id*. § 31-1)). In conjunction with these charges, the State filed a second petition to revoke the defendant's probation in case No. 19-CF-47, alleging that he violated the terms of his probation by committing new offenses.

¶ 5      Before trial, the defendant reached a plea agreement in all of his pending cases with the State, and the matter was set for a plea hearing. Prior to the plea hearing, the circuit court heard

2

arguments regarding whether the defendant was eligible for an extended term sentence. The circuit court ultimately determined that the defendant's TASC probation in case No. 19-CF-47 constituted a conviction, and therefore the defendant was extended-term eligible in case Nos. 20-CF-341 and 20-CF-345.

¶ 6 On February 8, 2021, the defendant entered into a plea agreement to resolve all three cases. The agreement provided that the defendant would admit to the allegations in the amended petition to revoke his probation in case No. 19-CF-47. The agreement further provided that the defendant would plead guilty in case No. 20-CF-345 to the aggravated battery and in case No. 20-CF-341 to the burglary of a motor vehicle. The agreement also provided that the defendant would pay restitution to Macie Higginson, the victim in case No. 20-CF-341, in the amount of $1,450. The agreement, moreover, provided that the sentence in case No. 20-CF-341 would be capped at five years, and that the sentences in case Nos. 20-CF-341 and 20-CF-345 would be mandatory consecutive, with case No. 19-CF-47 running concurrently with the other two charges, all to be served at 50%.

¶ 7 During the defendant's plea hearing, the State presented a factual basis regarding each of the offenses to which the defendant pleaded guilty. In regard to the aggravated battery, the State proffered that Officer Whiting, Sergeant Rinella, and other members of the Jefferson County Jail would testify that on November 9, 2020, the defendant was an inmate at the Jefferson County Jail. On that date, while in custody, the defendant sought medical attention, prompting Nurse Barsola to assist. When Nurse Barsola and a correctional officer reported to the defendant's cell, the defendant took a large plastic lunch tray out of the officer's hands and swung it, nearly hitting Nurse Barsola. This prompted other officers, including Sergeant Rinella, to respond to the cell to get the defendant under control. To remove the tray from the cell, the officers determined they

3

needed to handcuff the defendant. While attempting to get the defendant's hands behind his back, "he got a hold of Sergeant Rinella's hand," and he slammed her hand against a bed rail in the cell, causing bruising and scratches. The defendant refused to comply with the officers' orders, and he was eventually tased.

¶ 8 As to the charge of burglary, the State presented a factual basis supporting that Higginson reported to the Mt. Vernon Police Department that the defendant had been making several threats towards her. In light of this, Higginson requested to be escorted to the defendant's residence in order to obtain her belongings. While Officer Morlan was speaking with Higginson, the defendant appeared at the police department, and Officer Chamness tried to get him to go outside. At that time, the defendant walked over to Higginson's car and got inside the vehicle before Officer Chamness could stop him. Higginson later inspected the vehicle and found that $30, an identification card, and a department card had been taken from it without her permission. These items were later discovered in a fire pit at the defendant's residence.

¶ 9 Before entering the pleas, the defendant was asked if he understood that he did not need to plead guilty to the charges, and he confirmed that he understood his right. The defendant also confirmed that he understood he was waiving certain constitutional rights relating to the charges, including the presumption of innocence, the right to confront and cross-examine witnesses, the right to testify, the right to a speedy trial, and the right to be present at every proceeding. The circuit court admonished the defendant regarding the possible penalties he faced and verified that the defendant understood the applicable sentencing ranges for each offense that could be imposed by the court. The circuit court inquired whether the defendant wished to persist in his pleas of guilt, to which the defendant replied that he did. The circuit court also reviewed the collateral consequences of pleading guilty with the defendant, including those related to citizenship, housing,

4

firearms, and licenses. The defendant verified that no one was forcing him or threatening him to sign the guilty plea forms. The defendant was asked whether anyone had made any promises to induce him to sign the forms, to which he replied that his attorney had informed him that he would argue for a motion to reduce bond. The circuit court confirmed that the defendant was not promised a bond reduction, but only that his attorney would ask for one. After a brief recess, the circuit court verified that the defendant was satisfied with defense counsel's services and was entering the pleas of guilt freely and voluntarily. The circuit court then accepted the defendant's guilty pleas and set the matter for sentencing.

¶ 10     On June 10, 2021, the circuit court held the defendant's sentencing hearing. The circuit court stated that it would consider the presentence investigation (PSI) report filed by the probation office on March 23, 2021. During sentencing, the circuit court also discussed the potential sentencing ranges of the defendant's convictions. In case No. 19-CF-47, the range was 4 to 15 years. In case No. 20-CF-341, the defendant was extended-term eligible, with a range of 2 to 10 years, but the sentence was capped, by agreement, at 5 years. In case No. 20-CF-345, the defendant was also extended-term eligible, with a range of 3 to 14 years. It was clarified that 19-CF-47 would run concurrently with case Nos. 20-CF-341 and 20-CF-345, but case Nos. 20-CF-341 and 20-CF-345 would run consecutively with one another. The State requested 14 years for the residential burglary, 5 years for the burglary of a motor vehicle, and 14 years for the aggravated battery. The defense asked for four years for the residential burglary, two years for the motor vehicle burglary, and three years for the aggravated battery, and requested impact incarceration. The defense also sought the circuit court's recommendation for substance abuse counseling within the department of corrections.

¶ 11    The State argued factors in aggravation, including that the defendant's conduct caused or threatened serious harm to Sergeant Rinella, the defendant has a history of prior delinquency and criminal activity, the sentence is necessary to deter others, and that the defendant was convicted of a felony while he was serving probation. The defense argued in mitigation that the defendant will compensate the victim. The defense also brought to the court's attention the defendant's age, the defendant's chaotic childhood, and the defendant's substance abuse. After the arguments, the defendant delivered a statement in allocution in which he said,

> "I'd just like to say that I'm extremely sorry for the situation that occurred. All my life I've had a troubled childhood and everything. I've never been to prison, and I don't want to go. I don't think it would actually probably help me. Even when—she was right. Whenever I was out, I chose to still keep doing drugs because that's all I knew growing up. I'm sorry."

¶ 12    Following the defendant's statement, the circuit court found the defendant's history of prior delinquency and criminal activity to be an aggravating factor. The court also found, in aggravation, the need to deter others from committing similar crimes and the fact that the defendant committed a felony while on probation. The circuit court found that the defendant's commitment to compensate the victim for the damage was a factor in mitigation. The court acknowledged that probation was the preferred sentence. However, the court found that sentencing the defendant to probation or conditional discharge would depreciate the seriousness of the offenses and would be inconsistent with the ends of justice. The circuit court, in making this determination, stated that the defendant's conduct in the police department's parking lot was "brazen, and destructive and terrifying to some people." The court further noted that the defendant's conduct in the county jail was "uncalled for," and was evidence of "a total disrespect for the law and authority."

¶ 13    In sentencing the defendant, the circuit court declined to order impact incarceration and instead sentenced him to 10 years for the residential burglary, 5 years for the burglary to a motor

vehicle, and 10 years for the aggravated battery, for a total of 15 years served at 50% with 2 years of mandatory supervised release. As agreed, the defendant was also ordered to pay $1,450 in restitution to Higginson.

¶ 14    Following his sentencing, the defendant, through counsel, filed postplea motions to withdraw his guilty pleas and to reconsider his sentences. In the motion to withdraw his guilty pleas, the defendant asserted that his pleas were not entered knowingly, intelligently, and voluntarily. In his motion requesting the court to reconsider his sentence, the defendant argued that the circuit court failed to properly apply the factors in mitigation and aggravation, and that the court failed to "recognize the Defendant's potential for rehabilitation." After the defendant's counsel filed the postplea motions, counsel informed the circuit court that the defendant wished to make a claim asserting that counsel was ineffective. Counsel then filed a motion requesting the court to vacate his appointment. Thereafter, the circuit court appointed new postplea counsel, and, after several continuances, counsel filed amended motions to withdraw the defendant's guilty pleas and to reconsider his sentence.

¶ 15    In the amended motion to withdraw his guilty pleas, the defendant alleged that his guilty pleas were not made knowingly and voluntarily because of his mental health status at the time of the plea. At the time of the pleas, the defendant alleged that he was experiencing hallucinations due to his schizophrenia. The defendant further alleged that he sought treatment for his illness while incarcerated, and that he made his plea counsel aware of the issue prior to the entry of his plea. The defendant further claimed that plea counsel was ineffective for failing to file a motion to determine his fitness before he entered the guilty pleas.

¶ 16    After several additional continuances, on April 4, 2024, the circuit court held a hearing on the defendant's amended motions. At the hearing, the defense introduced medical records

7

regarding the defendant's mental health while incarcerated, as well as affidavits from the defendant and his father attesting to the defendant's schizophrenia diagnosis. The circuit court first heard testimony and arguments on the defendant's amended motion to withdraw his guilty pleas in case Nos. 20-CF-341 and 20-CF-345.

¶ 17     The defendant testified that, after being incarcerated on November 8, 2020, he started to experience problems with his health, including difficulty breathing, passing out, experiencing visual and auditory hallucinations, and suffering panic attacks. The defendant stated that he had been diagnosed with schizophrenia as a child, but was not taking medication for the condition prior to going to jail. The defendant further testified that while in custody, he spoke with medical staff on multiple occasions and was placed on medication. The defendant stated that he discussed his diagnosis with his attorney multiple times and had his father reach out to his attorney as well. Moreover, the defendant testified that he told his counsel that he was actively having hallucinations while in custody, prior to the entry of his pleas. The defendant testified that his mental health issues were affecting him at the time of his plea, stating that he was "hearing things, and seeing things" that told him to "go along with it and just act normal."

¶ 18     However, during cross-examination, the defendant acknowledged that he assisted his attorney in preparing his case by reviewing discovery with counsel and informing counsel that he had not taken anything from the vehicle. The defendant also acknowledged that he informed his counsel about the aggravated battery and that he had requested counsel to bring in multiple witnesses from the incident to testify about the altercation, including the nurse involved in the incident. Despite these acknowledgements, the defendant testified that his counsel never informed him of the possible penalties for the charges against him, and he also insisted that he did not commit either charge. The defendant further stated that he did not understand the possible

8

sentencing ranges at the time of his pleas, but acknowledged that the circuit court went through those penalties before accepting his pleas. The defendant also confirmed that he understood that he had a right to trial, to remain silent, to testify in his defense, and to present a case in his defense, and that he waived those rights by pleading guilty. Moreover, the defendant confirmed that he was not forced or threatened into signing the guilty pleas. However, the defendant testified during redirect that his understanding of the proceedings was different when he entered the pleas, because he felt someone was speaking to him during the plea hearing, and that he now feels more "stabilized."

¶ 19    The defendant's plea counsel testified that he was sure that he had advised the defendant of the possible penalties he faced for the charged offenses. In referring to his notes, counsel stated that on December 18, 2020, he advised the defendant that he had three choices: the matter could be set for jury trial, he could accept the State's offer, or he could make a counteroffer to the State. Counsel stated that when he advised the defendant, he appeared to understand counsel's explanations regarding each sentencing range and how monetary credit for time served applied to his outstanding bond. Counsel further stated that during the meeting, the defendant responded to counsel's questions and asked his own.

¶ 20    Counsel further testified that he recalled the defendant speaking to him about his mental health issues at the December 18, 2020, meeting, two months before the defendant entered the plea agreement, but counsel did not recall the defendant mentioning hallucinations. Counsel stated that during the meeting, the defendant told counsel that he had been administered a new medication for his mental health, which he preferred better. After the meeting, counsel stated that he asked his office to prepare a release of information form for medical records prepared by Dr. Deloso, Dr. Yu, Dr. Tate, and treatment provider Villaflores.

9

¶ 21    On January 5, 2021, after receiving the signed releases from the defendant, counsel's office mailed the releases to their respective offices. Counsel thereafter received a response from Dr. Yu's office indicating that the defendant had "only gone to Dr. Yu's office once when he was a kid and never came back, and further, they had no medical records for Mr. Hernandez."

¶ 22    Counsel testified that the next report he received from the defendant regarding his mental health was on April 5, 2021, two months before the defendant's sentencing hearing. In that meeting, the defendant told counsel that he had not seen a doctor regarding his mental health since his release. Counsel further testified that he adheres to the "*Dusky*" standard and Illinois statutes with respect to mental and physical fitness and that if he had any concern about the defendant's fitness, he would have presented the issue to the circuit court. However, the defendant presented no meritorious fitness issues that should have been presented to the circuit court. Further, had the defendant not understood the plea proceedings, counsel stated he would have brought it to the court's attention.

¶ 23    During cross-examination, plea counsel testified that he did not have a note in the defendant's file indicating that he made requests to the Jefferson County Jail for information related to the defendant's mental health. Counsel also did not have a note indicating that the defendant's father would be used as a witness at sentencing. During the redirect, plea counsel testified that if he believes a client meets the mental and physical fitness standards, he is satisfied as to the client's fitness. However, he sometimes attempts to obtain medication lists for mitigation purposes. Counsel further testified that he is confident that the defendant in this case understood and passed the standards for fitness at the time of his plea. Moreover, counsel confirmed that he had no doubt that the defendant entered into his guilty pleas intelligently, knowingly, and voluntarily.

¶ 24    At the conclusion of plea counsel's testimony, both the State and the defense rested on the arguments made in their motions. The circuit court subsequently denied the defendant's amended motion to withdraw his guilty pleas, finding that it had not heard enough evidence to overcome by a preponderance of the evidence that the defendant's plea "was anything other than knowing, intelligent, and voluntary." The circuit court determined that while the defendant has issues with his mental health, the issues did not rise to a level necessitating the withdrawal of his plea agreement.

¶ 25    Next, the court heard testimony and arguments on the defendant's amended motion to reconsider his sentences in case Nos. 19-CF-47 and 20-CF-345. The defense called the defendant's father, Miguel Hernandez, to testify. Miguel testified that he was not fully involved in the defendant's life until after his release from prison in 2006. Miguel stated that after his release, there were times when he had to take the defendant to see mental health professionals, as it related to his schizophrenia diagnosis. Miguel further testified that after he first contacted the defendant's plea counsel, he was later contacted by the plea counsel's office to discuss the defendant's medical history and medications. Miguel confirmed that plea counsel did not contact him to testify at the defendant's sentencing hearing. During cross-examination, Miguel testified that he was incarcerated in 1999 for murder shortly after the defendant's birth. Miguel further agreed that he would have given the same testimony at the defendant's sentencing.

¶ 26    The defense then argued that plea counsel should have argued and presented evidence for mitigation factor 16, that the defendant suffers from a serious mental illness, which affected his ability to understand the nature of his actions or to conform his conduct to the requirements of the law. 730 ILCS 5/5-5-3.1(a)(16) (West 2022). The defense argued that such a presentation would have led the circuit court to render different sentences in case Nos. 19-CF-47 and 20-CF-345. The

11

State countered, arguing that mitigation factor 16 is inapplicable to the defendant's situation because nothing was shown to the circuit court that he suffers "from such a serious mental illness that he doesn't know what he's doing or can't understand the nature of it and conform his acts." Moreover, the State highlighted that at the time of sentencing, the defendant had quit going to treatment, and as plea counsel testified, upon his release from custody, he admitted that he was no longer doing mental health treatment. Furthermore, the State argued that the testimony regarding the defendant's diagnosis and medication list was information already contained in the PSI, which the court had at the time it rendered its decision.

¶ 27    The circuit court then denied the defendant's amended motion requesting reconsideration of his sentence. The circuit court stated that it considered the motion, the State's response, the testimony of Miguel and plea counsel, as well as the presented exhibits, and the arguments of counsel. The court acknowledged that the issue came down to the defendant's mental health. The court further acknowledged that the defendant's PSI included information relating to his mental health and medications. The court determined that it would not have found factor 16 to be applicable in the defendant's case. Thereafter, the defendant filed a notice of appeal challenging the denial of his amended motions to withdraw his guilty pleas and to reconsider his sentence.

¶ 28                                    II. ANALYSIS

¶ 29                        A. Motions to Withdraw the Guilty Pleas

¶ 30    "A defendant does not have an automatic right to withdraw [his or] her guilty plea, as '[a] plea of guilty is a grave act that is not reversible at the defendant's whim.' " *People v. Burge*, 2021 IL 125642, ¶ 37 (quoting *People v. Reed*, 2020 IL 124940, ¶ 47). "Rather, a defendant must establish a manifest injustice under the facts involved." *Id.* "[A] defendant should be allowed to withdraw his plea where his plea was not constitutionally entered." *People v. Manning*, 227 Ill. 2d

12

403, 412 (2008). As is relevant here, "[a] defendant may challenge the constitutionality of his guilty plea *** by alleging that the plea of guilty was not made voluntarily or with full knowledge of the consequences." *Id.* The decision whether to grant or deny a motion to withdraw a guilty plea rests in the sound discretion of the trial court and, therefore, is reviewed for abuse of discretion. *People v. Hughes*, 2012 IL 112817, ¶ 32. "An abuse of discretion will only be found where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *Burge*, 2021 IL 125642, ¶ 37.

¶ 31 On appeal, the defendant contends the circuit court committed reversible error by denying his amended motion to withdraw his guilty pleas. This is based on the defendant's contention that his plea counsel rendered ineffective assistance by failing to request a fitness evaluation that "would have demonstrated a reasonable probability that [he] was not fit to enter the plea agreement at the time." The defendant argues that his plea counsel was on notice of his diagnosis, active hallucinations, and medical treatment while in custody, yet counsel failed to investigate or seek a fitness determination. The defendant asserts that the evidence of his mental health contained in his amended motion to withdraw his guilty pleas and presented at the hearing raised a *bona fide* doubt of his fitness. The defendant relies on his own testimony that while incarcerated, he was suffering from visual and auditory hallucinations, as well as the affidavits submitted by himself and his father, Miguel, regarding his mental health diagnosis and "troubles with hallucinations." The defendant also cites his medical records from "prison," seemingly referring to the Jefferson County jail, which he argues documented his "troubles with his mental health—including hallucinations," prior to the entry of his guilty plea. Moreover, the defendant argues that even "without a formal fitness evaluation, there was significant evidence provided with the amended motion to show that [he] was suffering from serious mental illness prior to entering the plea agreement."

¶ 32　The State counters that the circuit court properly denied the defendant's amended motions to withdraw his guilty pleas. The State asserts that the defendant failed to establish ineffective assistance of plea counsel. The State contends that counsel's performance was objectively reasonable because he investigated the defendant's mental health, sought records, and found no evidence suggesting a *bona fide* doubt of the defendant's fitness. The State highlighted that counsel testified that the defendant was "lucid[,]" engaged, and able to assist in his defense, and did not recall the defendant reporting hallucinations prior to the plea. The State further argues that the defendant cannot establish prejudice because he cannot show that there is a reasonable probability that he would have been found unfit. The State further asserts that the record demonstrates the defendant's fitness because during the plea, the defendant gave appropriate, coherent responses, confirmed his understanding of his rights and sentencing ranges, and voluntarily entered the plea.

¶ 33　In reply, the defendant maintains that plea counsel's investigation into the defendant's mental health was inadequate, because, according to the defendant, while counsel sought to contact childhood provider records, counsel failed to seek medical records from the Jefferson County Jail, or to follow up with Miguel regarding the defendant's mental health. The defendant argues that counsel's lack of recollection of his reports of hallucinations is evidence of his deficient performance. The defendant also rebuts the State's reliance on the defendant's coherence during the plea, arguing that his outward lucidity does not negate unfitness. Moreover, the defendant argues that if the defendant's "ongoing hallucinations" were brought to the circuit court's attention through a fitness evaluation, then he would have been found unfit.

¶ 34　It is well-settled that "[d]ue process bars the prosecution of an unfit defendant." *People v. Brown*, 236 Ill. 2d 175, 186 (2010). Under Illinois law, a defendant is presumed fit to stand trial unless, due to a mental or physical condition, he is unable to understand the nature and purpose of

the proceedings against him or to assist in his defense. *Id.*; 725 ILCS 5/104-10 (West 2022). To be competent to stand trial, a defendant must have a rational and factual understanding of the proceedings against him. *People v. Washington*, 2016 IL App (1st) 131198, ¶ 70. If a *bona fide* doubt of a defendant's fitness is raised, a trial court must order a fitness hearing. *Brown*, 236 Ill. 2d at 186; 725 ILCS 5/104-11(a) (West 2022). The issue of the defendant's fitness for trial, to plead, or to be sentenced may be raised by the defense, the State, or the court at any appropriate time before a plea is entered or before, during, or after trial. *Id.* Whether or not a *bona fide* doubt of fitness exists is within the discretion of the circuit court, which is in the best position to observe the defendant and evaluate his conduct. *Washington*, 2016 IL App (1st) 131198, ¶ 72.

¶ 35    To establish a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's errors, a reasonable probability exists that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Davis*, 205 Ill. 2d 349, 364 (2002). The failure to establish either prong is fatal to a defendant's claim. *People v. Caffey*, 205 Ill. 2d 52, 106 (2001). A court need not consider whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If the ineffective assistance claim can be disposed of on the ground that the defendant did not suffer sufficient prejudice, the court need not decide whether counsel's errors were serious enough to constitute less than reasonably effective assistance. *Strickland*, 466 U.S. at 697.

¶ 36    To establish that his trial counsel's alleged incompetency prejudiced him, defendant "must demonstrate that facts existed at the time of his trial which raised a *bona fide* doubt of his ability to understand the nature and purpose of the proceedings and to assist in his defense." *People v. Eddmonds*, 143 Ill. 2d 501, 512-13 (1991). Therefore, the defendant must demonstrate that the

15

circuit court would have found a *bona fide* doubt of his fitness and ordered a fitness hearing had defense counsel requested it under the circumstances presented. *Id.* at 513.

¶ 37    The defendant points to information provided in his amended motion to withdraw his guilty plea that he believes established a *bona fide* doubt as to his fitness. He asserts that the evidence established he suffers from schizophrenia with visual and auditory hallucinations, and that counsel was aware of these issues prior to the defendant entering into the guilty plea. The fact that a defendant suffers from mental disturbances or requires psychiatric treatment does not automatically result in a *bona fide* doubt of the defendant's fitness. *Id*. at 519.

Here, the record does not reveal, and the defendant does not provide, any basis that would arguably raise a *bona fide* doubt about his fitness. This is especially true when considered in light of the record as a whole.

¶ 38    Our review of the record reveals that the defendant's demeanor throughout the circuit court proceedings was rational and appropriate. Specifically, as it relates to his guilty plea hearing, the defendant was able to adequately, logically, and coherently confirm that he understood that he did not need to plead guilty to the charges; that he understood he was waiving constitutional rights relating to the charges, including the presumption of innocence, the right to confront and cross-examine witnesses, the right to testify, the right to a speedy trial, and the right to be present at every proceeding. The defendant also verified that he understood the applicable sentencing ranges for each offense that the court could impose. Moreover, after the circuit court reviewed the collateral consequences of pleading guilty, the defendant verified that no one was forcing or threatening him to sign the guilty plea forms. Only then did the circuit court conclude that the defendant had entered the pleas of guilt freely and voluntarily. Thus, it is apparent from the record that the defendant adequately understood the nature and purpose of the plea proceedings and was

16

able to assist in his defense. Furthermore, after observing the defendant's conduct and demeanor firsthand, the circuit court expressed no concerns about the defendant's ability to understand the nature of the proceedings. See *People v. Hanson*, 212 Ill. 2d 212, 224 (2004).

¶ 39 Further, at the hearing on the motion to withdraw, defendant's testimony demonstrated his grasp of the legal process. He testified that he knew he could have a trial; he had a right to remain silent; he had a right to stand and testify in his own defense; and that he was waiving those rights by pleading guilty. The defendant further stated that "nobody threatened or forced me" into pleading guilty. The defendant also stated that he could not "dispute" that he was provided additional time to speak to his counsel during the plea hearing. Moreover, the defendant confirmed that he had been satisfied with his plea counsel's performance, and that he understood the penalties of pleading guilty.

¶ 40 In this case, the record clearly illustrates that the defendant understood the nature and purpose of the plea proceedings. The circuit court provided the defendant with a detailed explanation of the proceedings and informed the defendant of his rights during those proceedings. The defendant stated that he understood and later confirmed his understanding at the hearing on the motion to withdraw. Further, the record shows that the defendant participated in his own defense by communicating and conferring with his counsel. The defendant's counsel testified that he saw no evidence that raised a *bona fide* doubt regarding the defendant's fitness to plead and be sentenced.

¶ 41 As discussed, the record demonstrates that the defendant both understood the nature of the proceedings and participated in his defense. His defense counsel testified that throughout his representation of the defendant, he saw nothing to indicate that the defendant did not understand the proceedings or that there was a *bona fide* doubt of the defendant's fitness. The circuit court

17

had several opportunities to observe the defendant and interact with him in the courtroom. For these reasons, we find that the defendant has failed to demonstrate a reasonable probability that a fitness hearing would have been ordered or that the outcome of the proceedings would have been different. Accordingly, the defendant cannot satisfy the prejudice prong of the *Strickland* test, and his claim of ineffective assistance of counsel fails.

¶ 42                                   B. The Defendant's Sentence

¶ 43    The defendant's final argument on appeal concerns his sentence. He contends that the circuit court committed reversible error by denying his amended motion to reconsider his sentence in case No. 20-CF-345. We disagree.

¶ 44    The Illinois Constitution requires sentencing courts to determine sentences according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. Ill. Const. 1970, art. I, § 11. To comport with constitutional sentencing requirements, the legislature enacted procedures setting out aggravating and mitigating factors that a circuit court is to consider when making a sentencing decision. 730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2022). Among the statutory mitigating factors is whether, at the time of the offense, the defendant was "suffering from a serious mental illness which, though insufficient to establish the defense of insanity, substantially affected his or her ability to understand the nature of his or her acts or to conform his or her conduct to the requirements of the law." *Id*. § 5-5-3.1(a)(16).

¶ 45    "The trial court has broad discretionary powers when selecting an appropriate sentence." (Internal quotation marks omitted.) *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 102. Although the sentencing court may not ignore relevant mitigating factors (*People v. Flores*, 404 Ill. App. 3d 155, 157 (2010)), the weight to be given to each factor is "left to the sound discretion of the trial court." *Sturgeon*, 2019 IL App (4th) 170035, ¶ 104. Moreover, "there is a well-

18

established presumption that the sentencing court considered all of the mitigating factors, without the court's having to recite them or to assign a value to each factor presented in the sentencing hearing." *People v. Chambers*, 2021 IL App (4th) 190151, ¶ 80. This presumption will not be overcome absent "explicit evidence from the record that the trial court failed to consider mitigating factors." *People v. Halerewicz*, 2013 IL App (4th) 120388, ¶ 43.

¶ 46      A circuit court's determination of the appropriate sentence involves considerable judicial discretion. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). Thus, a sentence within the statutory range set by the legislature is presumed proper, and the circuit court's sentence will not be disturbed on appeal absent an abuse of discretion. *Sturgeon*, 2019 IL App (4th) 170035, ¶ 104. The court abuses its discretion in sentencing a defendant where the sentence is "greatly at odds with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." *Id.* The supreme court requires us to give the circuit court "great deference" because it is "generally in a better position than the reviewing court to determine the appropriate sentence." *Stacey*, 193 Ill. 2d at 209. The circuit court "has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *Id.* Accordingly, the supreme court has directed us not to substitute our judgment for that of the circuit court merely because we could have weighed these factors differently. *Id.*

¶ 47      According to the defendant, the circuit court abused its discretion in denying his motion to reconsider his sentence, because it failed to properly consider his serious mental illness at the time of the offense as a statutory mitigating factor. The defendant argues that although the circuit court acknowledged his mental health history during the hearing on the amended motion to reconsider sentence, the circuit court rejected its mitigating value. The defendant contends this was an abuse of discretion because the court lacked critical evidence during the sentencing hearing, because his

19

plea counsel failed to "sufficiently investigate and introduce the evidence that was provided with the amended motion and never ordered a fitness examination (see Argument I)." In support of his argument, the defendant highlighted his medical records, affidavits, and his own testimony, showing that he was experiencing schizophrenia-related hallucinations during the time surrounding the offense, which impaired his ability to conform his conduct.

¶ 48    The State counters that the circuit court properly denied the defendant's amended motion to reconsider his sentence in case No. 20-CF-345 because the court properly weighed the aggravating and mitigating factors. The State contends that the circuit court properly determined that "the evidence presented did not establish that defendant's illness substantially affected his ability to understand the nature of his acts." The State relied on this court's decision in *People v. Thompson*, 2024 IL App (5th) 200329-U,[1] to argue that the defendant failed to establish evidence supporting that the circuit court should have considered a mitigated sentence under 730 ILCS 5/5-5-3.1(a)(16) (West 2022). Moreover, the State argues that the finding was proper because the defendant failed to present evidence linking his schizophrenia or hallucinations to his actions during the offense, and that he also failed to explain how it affected his ability to conform with the requirements of the law.

¶ 49    In reply, the defendant maintains that the timeline of jail medical records, combined with the defendant's conduct during the aggravated battery, demonstrates that he was experiencing severe mental illness at that time. Moreover, the defendant distinguishes his case from *Thompson*, arguing that it is factually inapplicable because in *Thompson*, a fitness evaluation was conducted and the defendant was found to be malingering, whereas he had never received a fitness evaluation

---

[1]Nonprecedential Rule 23 orders issued on or after January 1, 2021, may be cited for persuasive purposes. Ill. S. Ct. R. 23(e)(1) (eff. Jan. 1, 2021).

at all. Moreover, the defendant maintains that his behavior surrounding the offense demonstrates that his mental illness impaired his ability to conform his conduct to the law.

¶ 50    Here, the defendant was eligible for an extended-term sentence of 3 to 14 years' imprisonment for aggravated battery. 730 ILCS 5/5-4.5-35(a) (West 2022). The defendant was sentenced to 10 years' imprisonment for the offense. The circuit court imposed a 10-year sentence, which falls well within the statutory range. While the defendant's schizophrenia diagnosis was documented in the presentence investigation report, the mere existence of a mental illness does not automatically require mitigation. Section 5-5-3.1(a)(16) of the Uniform Code of Corrections (*id*. § 5-5-3.1(a)(16)). applies only where the illness substantially affected the defendant's ability to understand his conduct or conform it to the law at the time of the offense.

¶ 51    The record does not establish such a substantial impairment. Although the defendant experienced mental health difficulties while incarcerated, including reported hallucinations, the evidence does not demonstrate that those symptoms rendered him incapable of understanding his actions or conforming his conduct to the requirements of the law at the time of the offense in the manner contemplated by the statute. At the reconsideration hearing, the circuit court expressly acknowledged the defendant's mental health issues but determined that they did not rise to the level required for statutory mitigation. The circuit court further stated that even had the additional records been presented at the original sentencing hearing, it would not have found them mitigating. This statement on the record confirms that the circuit court considered the evidence and rejected its mitigating weight, rather than ignoring it.

¶ 52    In light of the deference owed to the sentencing court and the presumption that it considered all relevant mitigating factors; we cannot say that the 10-year sentence in case No. 20-CF-347 was greatly at odds with the spirit and purpose of the law or manifestly disproportionate to the nature

21

of the offense. Accordingly, we find the circuit court did not abuse its discretion in denying the defendant's amended motion to reconsider his sentence.

¶ 53                                III. CONCLUSION

¶ 54    For the foregoing reasons, we affirm the judgment of the circuit court.


¶ 55    Affirmed.